OPINION
{¶ 1} Defendant-appellant Brian S. Copp appeals from his conviction and sentence for violation of a domestic violence civil protection order. Copp contends that his conviction is not supported by the evidence, because the order that he was charged in the complaint with having violated, a temporary order, had been superseded by a subsequent, agreed civil protection order, at the time of his alleged violation. He also contends that his conviction is against the manifest weight of the evidence.
 {¶ 2} We conclude that the complaint was effectively amended at trial when Copp, through his counsel, inquired as to which order he was alleged to have violated, was told it was the later civil protection order, and did not object, but proceeded to try that issue. We further conclude that the testimony of Copp's ten-year-old son is not inherently incredible, and that the trial judge, who chose to credit that testimony, could reasonably conclude, as he did, that Copp had been reckless in being, and remaining, at a place within 500 yards of the residence of the persons protected by the order. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} At the date of the alleged offense, August 22, 2002, Copp and his wife, Lisa, were in the throes of divorce. A consent agreement and domestic violence civil protection order had been issued, pursuant to R.C. 3113.31. That order contained the following provision:
 {¶ 4} "5. RESPONDENT SHALL STAY AWAY FROM THE FAMILY OR HOUSEHOLDMEMBER(S) NAMED IN THIS ORDER. Respondent shall not be present within 500 yards (distance) of them, and shall refrain from entering any place where they may be found. This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters. If Respondent accidentally comes in contact with these family or household member(s) in any public or private place, Respondent must depart immediately."
 {¶ 5} On the date of the alleged violation, Copp called his wife's cell phone between 6:15 and 7:00 p.m. in order to speak to their son, Andrew, which he was allowed to do pursuant to the consent agreement. Copp testified that he asked Andrew where he and his mother were, and was under the impression that Andrew told him they were in Medina, where Lisa's parents live.
 {¶ 6} In fact, Andrew, Lisa, and Lisa's mother (Andrew's grandmother) were at the Panera Restaurant in the Town and Country Shopping Center, in Kettering. At trial, Andrew testified concerning this telephone call, as follows:
 {¶ 7} "Q. What did he say to you?
 {¶ 8} "A. He said um, he said, `Where are you?' and I said, `Panera.'
 {¶ 9} "Q. And then what did he say?
 {¶ 10} "A. He said um, I um, he said, `Who's with you?' and I said, `My Grandma and Mom.'
 {¶ 11} "Q. You have to speak up so the Judge can hear. He said, `Who's with you?' and you said what?
 {¶ 12} "A. My Grandma and my Mom.
 {¶ 13} "Q. What did he say then?
 {¶ 14} "A. After that he said um, um, he said, `Are you in Medina?' I said, `No I'm in Centerville.' And then he said, `Oh.' And then um, he said, `I love you.' And then we hang up.
 {¶ 15} "Q. He asked you if you were in Medina and you said, `No, we're in Centerville.'
 {¶ 16} "A. Yes."
 {¶ 17} On cross-examination, Andrew testified as follows:
 {¶ 18} "Q. Did you have any problem hearing what your Dad was saying when he was talking to you on the cell phone?
 {¶ 19} "A. No.
 {¶ 20} "Q. Did he have to repeat anything that he was saying to you?
 {¶ 21} "A. No.
 {¶ 22} "Q. Did you have to repeat anything that you said to him?
 {¶ 23} "A. No.
 {¶ 24} ". . .
 {¶ 25} "Q. Did your Dad know that your Grandma was visiting?
 {¶ 26} "A. Yes. I told him the week before and he called a couple of days when they came down he um, called and then I said that they were here.
 {¶ 27} ". . .
 {¶ 28} "Q. Do you remember your Dad's asking you if you were in Medina?
 {¶ 29} "A. Yes I do.
 {¶ 30} "Q. And you told him no, that you were in Centerville?
 {¶ 31} "A. Yes."
 {¶ 32} As Andrew acknowledged at trial, the Panera is actually in Kettering, not Centerville. The author of this opinion, having resided in Kettering, and currently residing in Washington Township, within walking distance of the municipal limits of Centerville, can take judicial notice that Kettering and Centerville, both located in the southern part of Montgomery County, are adjacent municipalities.
 {¶ 33} Following Copp's conversation with his son, he called upon the next-door neighbor to the marital residence where Copp's wife and son lived.
 {¶ 34} Some time after 8:00 p.m. that evening, Lisa, Andrew, and Lisa's mother, returned home. Lisa saw Copp's car parked at the neighbor's house, at the edge of Lisa's driveway. Lisa went to the neighbor's house to tell her neighbor that Copp was not supposed to be there. Upon returning to her house, Lisa saw Copp outside her neighbor's house. She called the police.
 {¶ 35} A complaint was filed alleging that Copp "Did recklessly violate the terms of a protection order issued pursuant to Section 2919.26
of the Ohio Revised Code." An order issued pursuant to R.C. 2919.26 is a temporary protection order and ceases to be effective upon the issuance of a protection order or approval of a consent agreement arising out of the same activities as those that were the basis of the complaint upon which the order is based. R.C. 2919.26(E)(2)(b). The consent agreement and domestic violence civil protection order entered on March 29, 2002, was a subsequent order that caused the earlier, temporary order to cease to be in effect.
 {¶ 36} At trial, there was some confusion, at one point during the cross-examination of Lisa Copp, concerning the order that Copp was alleged to have violated. This colloquy was as follows:
 {¶ 37} "NEWBERRY [representing the State]: Your Honor I'm gonna object on the grounds of relevance because my exhibit is not an ex parte Order. He was served with it.
 {¶ 38} "COURT: I sustain the objection. I don't think this witness knows the distinction of `ex parte'. And I don't know that it's relevant.
 {¶ 39} "STEPHAN [representing Copp]: Thank you. All right. Well, Judge the purpose for the line of questioning is that she referred to this as an Amended Order. It is not an Amended Order. That's uh. . .
 {¶ 40} "COURT: Well how about subsequent.
 {¶ 41} "MRS. COPP: Your Honor, if I, can I. . .
 {¶ 42} "COURT: Just hold on a second. We're quibbling about words. It's a subsequent Order. I think she understands that there was an Order in February and this is the Order that was in effect on the time and date that concerns us here today.
 {¶ 43} "STEPHAN: Thank you."
 {¶ 44} At the conclusion of the bench trial, the trial court found Copp guilty. A judgment of conviction was entered, and the court imposed a $250 fine and a 30-day-jail sentence, with all 30 days being suspended, and $150 of the fine being suspended, upon the condition that there be no similar violation in the next two years, and that the fines and costs are paid. Copp was placed on unsupervised probation for a period of two years.
 {¶ 45} From his conviction and sentence, Copp appeals.
 I {¶ 46} Copp's First Assignment of Error is as follows:
 {¶ 47} "Appellant's Conviction Is Not Supported By Sufficient Evidence."
 {¶ 48} In this assignment of error, Copp contends that there is no evidence that he violated the temporary protection order, issued pursuant to R.C. 2919.26, which is the violation alleged in the complaint.
 {¶ 49} It is true that the temporary protection order referred to in the complaint had been superseded by the consent agreement and protection order later filed. In our view the complaint was implicitly amended to reflect this when, during the cross-examination of Lisa Copp, the trial court clarified that the order that Copp was alleged to have violated was the subsequent order, and Copp did not object. The implicit amendment of the complaint cannot have misled or confused Copp, because it was made clear that he was alleged to have violated the subsequent order.
 {¶ 50} Copp cites State v. Scruggs (2000), 136 Ohio App.3d 631, at 635-636, for the proposition that a conviction must be reversed when the State fails to prove the allegations set forth in the complaint. The essential difference is that in Scruggs, supra, the defendant objected to the introduction of testimony concerning events that were not related to the offense charged in the complaint. In other words, the defendant in that case did not implicitly consent to being tried for an offense that was at variance with the language in the complaint. In the case before us, by contrast, it was made clear that the trial was concerned with an alleged violation of the subsequent protection order, and Copp never objected to that.
 {¶ 51} Copp's First Assignment of Error is overruled.
 II {¶ 52} Copp's Second Assignment of Error is as follows:
 {¶ 53} "Appellant's Conviction Is Against The Manifest Weight Of The Evidence."
 {¶ 54} Copp recognizes that he can be convicted for violating the order if he can be found to have acted recklessly, in violation of the order. As Copp notes, "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 55} Copp's argument in support of this assignment of error is that he had no reason to expect that his wife and child would be present at the marital residence when he called upon the next-door neighbor, Copp having been under the impression, based upon his conversation with his son, Andrew, that they were in Medina, Ohio that evening. Medina is 3 ½ to 4 hours distant from the marital residence by car.
 {¶ 56} The State relied upon the testimony of Copp's son, Andrew, for the proposition that Copp knew that his wife and son were having dinner at a restaurant in Kettering, which would make it likely that they would return home while Copp was still at the neighbor's residence next door.
 {¶ 57} In explaining this decision from the bench, the trial court expressed its decision to credit the testimony of Andrew Copp, as follows:
 {¶ 58} "We've heard testimony from a number of witnesses this morning. Five [5] to be exact. And uh, the only one without a motive in here, well there were two [2], Officer Cole's just doing his job. But uh, the only person who's testified who really had no stake in here was young Andrew who was put in an incredibly difficult situation here this morning by his parents and he is the true victim in this case. We have sympathies for Mrs. Copp uh, going through a divorce and for Mr. Copp, going through a divorce. Apparently, it's a painful one and that does funny things to people's lives. However, the testimony we have heard today is pretty consistent uh, Andrew told us about his conversation with his father. There was no doubt, no hesitation in his mind whatsoever that he conveyed to his father that they were in Dayton or Centerville or Kettering, somewhere at least in the southern suburbs of Montgomery County — not in Medina. The testimony of Melissa Nunn [the neighbor] was to the effect that uh, when the conversation with Brian Copp began, Brian blurted out more or less that Lisa and Andrew were in Medina without any questioning or inquiry on the part of Mrs. Nunn.
 {¶ 59} Mr. Copp tells us a different version that indicates that his former neighbor asked where they were and gave him the opportunity to tell then. We're of the opinion that Mr. Copp knew exactly what he was doing. That he went to a place though he knew he shouldn't be and uh, artfully seized an opportunity to explain it away, however, viewing the credibility of the witnesses and weighing their interests at heart uh, we don't buy Mr. Copp's line of testimony. We find that the State has proved beyond a reasonable doubt that on the date and time in question that Mr. Brian S. Copp did recklessly violate the terms of the Protection Order issued pursuant to statute. Accordingly, we make a finding of guilty and are ready to impose sentence unless there is any reason not to."
 {¶ 60} Based upon our review of the entire record, we conclude that the trial court was reasonable in deciding to credit the testimony of Andrew Copp, and not to credit the testimony of Brian Copp, on the crucial issue of whether Brian learned from Andrew that Andrew and his mother were at a restaurant in the Dayton area that evening, as opposed to being in Medina. Accordingly, we conclude that the finder of fact did not lose its way, and that the judgment of the trial court is not against the manifest weight of the evidence.
 {¶ 61} Copp's Second Assignment of Error is overruled.
 III {¶ 62} Both of Copp's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.